All judges and counsel should mute their phones during the break. Judges and argument counsel should unmute their phones when court resumes. Counsel, are there any questions? No questions, sir. I'm sorry, sir? No questions. Okay. Judges, are you ready to proceed? Yes, we are. This is Judge Hartz. Welcome to our proceedings this morning. We have five cases on our docket, but just three set for oral argument. So we probably will not take a break. Counsel will be given three minutes to introduce their cases without interruption from the court. But as happened yesterday, some attorneys just want to take a couple minutes and then open themselves up to questions. I will ask the first questions and then call on the other members of the panel in order of seniority. Counsel, if you're ready to proceed for petitioner, introduce yourself and please begin. Good morning, judges, and may it please the court, Andrew Bermonti for petitioner. With the court's leave, I will try to reserve three minutes for rebuttal. Mr. Estrada asked this court to find that the BIA violated its regulations and applied the wrong standard of review by making predictive findings of facts in the first instance. The court should then remand. Since 2015, there are four logical steps an immigration judge should follow in deciding whether the non-citizen's qualifying relative will suffer exceptional and extremely unusual hardship. Like in a trial court, first, the judge reviews all documentary and testimonial evidence. Second, based on that evidence, the judge will make findings of past and present facts that may bear on the future hardship the qualifying relative may suffer if that non-citizen is removed. Third and critically and newly, the judge must make predictive findings as to the kind and degree of hardship the qualifying relative will likely suffer. Only then is the judge ready for the final step of deciding if, in their totality, those predicted future hardships rise to the standard of exceptional and extremely unusual. Although the BIA may review all factual findings only for clear error, but it may not make factual findings itself. This wasn't always the case. It wasn't until September 2002 that the BIA adopted regulations defining a new standard of review by which it could only review factual findings of clear error. But over the next 13 years, the BIA insisted that predictive findings, such as predictions of hardship to qualifying relative, were findings of law which it could still review de novo. This meant that the BIA itself could make its own determination as to the type of hardship those relatives might suffer. That's at the core of this case, and it changed in 2015. In matter of ZVO, the BIA accepted the weight of legal authority of Sixth Circuit Court and agreed that predictive findings are also findings of fact which it could only review for clear error. The BIA, in its appellate review in this case, implicitly made its own predictive findings as to the children's psychological, emotional, and educational hardship. In so doing, it violated its regulation by applying the pre-2015 standard of review to a 2017 immigration judge's decision. That was legal error requiring remand. As to this court's jurisdiction, when the court... Counsel, this is Judge Hart. Were there any factual assertions, assertions of historical fact or even predictions regarding the effect on the child that were not accepted by the BIA? Is there any indication that the BIA did not believe anything that the petitioner presented to the IJ? No, Your Honor. The BIA found that one predictive finding was not relevant, but it did not reverse any of the judge's factual findings. Go ahead. I wanted to make one more comment as to the court's jurisdiction. When the court applies the strong presumption in favor of judicial review of an agency's decision that the Supreme Court itself recently recognized again in Guerrero v. Alfreya, this court has jurisdiction over today's petition under both Section 1252A1 and also 1252A2D. The BIA's violation of its regulation governing standard of review is nondiscretionary, so under Stabito v. Alfreya, it is not a judgment subject to the 1252A2D jurisdiction stripping provision. Even if it was, the court would have jurisdiction under 1252A2D because it is previously held that issues related to standard of review are legal questions. Counsel, Judge Phillips, would you like to ask any questions at this time? I would, just to get some clarification. Because Judge Hart's asked did the board overrule or disagree with fact findings, and you said no. Did the board substitute its own fact findings? I'm looking at the board's decision, and it says, however, the evidence presented does not demonstrate the elevated or unusual emotional or psychological issues. In other words, the board looked at the record, and when you look at the record, what would support, what in the record would support that very difficult standard? The, in the record itself, the evidence, there's 300 pages of evidence, as well as the testimony of three witnesses that look at the psychological, educational, and emotional impact, particularly on the daughter, Leslie. A number of concerns, whether she would be able to go to college, if she had to drop out of school and work, whether or not she had the emotional maturity to continue in school, giving her attachment to her father. A number of questions along those lines, a lot of evidence along those lines. Well, is there? Because I read the parents' testimony, and it really doesn't go to that. The teacher talked about what Leslie had achieved in school and what her hopes were, and certainly a very nice young woman. And then I read the, I gather what the centerpiece is, is Dr. Peter's report, and that's pretty thin, because the highlight there seems to be Leslie appears to be a somewhat immature child for her age and is very emotional. As such, that being immature and very emotional, which you would expect when the subject is her father being deported, as such, she will likely suffer with the separation from her father, and she appears to have limited coping skills, which becomes the theme, that she has limited coping skills, and therefore the standard is met. But that seems awfully sparse for what you're asking. In other words, what did the IJ do wrong? The IJ did everything the IJ could with the evidence the IJ had. The board looked at all of the evidence and said it's not enough. The IJ clearly had in his mind the sufferings in some specific ways that Leslie and perhaps her brother would suffer hardship, apart from financial hardship, if the father was deported. He failed to put those in writing. He clearly had them in his mind, and because he did not make those predictive findings, the BIA had nothing to review. They were required under a matter of SH and their own case law to remand, to obtain factual findings sufficient for them to make the ultimate decision whether or not the hardships rose to the exceptional and extremely unusual level. One more question, and then I'll be quiet, which is kind of what I want to ask a little bit earlier, which is, what was the IJ supposed to say when you say make findings, predictive findings? Because he could say that, the IJ could say, I find that she is a somewhat immature child and that she's very emotional, therefore she has limited coping skills. I don't think that the IJ can enhance that and say more than what the evidence is. If that would have come up to the board and the board would have said, sorry, but that's not good enough for our standard, what would you say? Would you even have an appeal? I would, I would be, I would have the same appeal because the judge has not taken what are observations as to how Leslie is today, her emotional condition, her psychological condition, or her aspirations in school, and made that next, that third step, predictive findings of how will her dad's removal affect her in the future? For example, the judge could say, based on the psychological evidence provided by Dr. Peters and the testimony of the teachers, I expect or Leslie will experience a significant fall off in her educational attainment, or she will not be able to go to college, making a predictive finding. Judge Floyd? Based on anything? I mean, I predict that she won't be able to go to college. And I just don't see the expertise. One last question, and then I truly will. The last question is, of course, this report is written four years ago, and she's a 14 year old who's in seventh grade in May. A lot's happened in the last four years, and we're sending it back for review on the record, which is what I would expect, and then issue factual, clear factual findings on the record it had before. Presumably the BIA has the authority to reopen the case. Thank you very much. Judge Floyd, would you like to ask questions? Yes, I do have a question or two. Counsel, it seems to me that your argument here is different than it was when you tried to, when you started hearing before the BIA. You argued there that the IJ's decision unmistakably shows that he believed the children would suffer both financial and non-financial hardship. You also argued that the IJ's decision may not be a masterpiece, you said, but it demonstrates that the IJ considered more than economic deprivation. I see that as being different than your argument today, which is the IJ didn't make any findings. It didn't, it didn't, it should have made more detailed findings. Can you address that seeming inconsistency? Yes, Judge. In my motion to reconsider, I asked the BIA to review its determination that the judge only considered financial hardship, and therefore under case law, that was insufficient. I asked them to make the logical assumption that because the judge articulated some evidence of psychological, emotional, and educational hardship, and also cited the case law for proposition that more than financial hardship is required, that those two things put together require the logical presumption, logical conclusion that the judge believed there would be future hardship apart from financial. That is the way I understood your argument, but did you make this argument, which to me is a different argument, which is you need to remand because you can't make your own fact findings or implied fact findings, and the district court didn't make, for the district court, I'm sorry, the IJ didn't make sufficient findings, and so you need to remand. Yes, absolutely. Is that the argument? Did you also make that argument? Wasn't an alternative argument? Yes, Your Honor. Yes, I said if the BIA does not believe that the IJ made predictive findings on economic hardship with sufficient clarity, it should remand. That was a major portion of my motion to remand. And presumably, though, the BIA did think that there were sufficient findings or certainly sufficient information in the record to support what the IJ did say about non-financial hardship. I guess I'm struggling with what it is exactly that you suggest that there were implicit factual findings by the BIA, but I don't know what those were. It is the judge's role to make predictive findings as to what hardship the children will suffer if their father is removed. It is then the BIA's job to determine whether or not those findings rise to the level of exceptional and extremely unusual hardship. And I believe that because the judge made no such predictive findings and the BIA, nevertheless, reversed his decision, the BIA had to have in its own mind what would happen to the children. Those are predictive findings that the BIA itself made. Thank you, counsel. Counsel, let me ask, this is Judge Hartz. What if the BIA looked at all the evidence presented before the IJ, including all the evidence presented by petitioner, and said, we'll accept all that. We'll accept everything that the petitioner presented. And that just isn't enough. Do they then have to send it back to the IJ for any further findings? What good would that do? Absolutely. Absolutely. I think that's precisely what it means when we say that the BIA cannot make its own factual findings. Well, look, an appellate court can't make factual findings either. We can say on the record there's not enough there to support the judgment below. Why is it different with the BIA? Why can't, why isn't that essentially a legal matter? No matter how much you have, even if I believe everything you gave me, there are not the necessary exceptional circumstances. What if the petitioner hadn't put on anything about this? Would we have to send it back down for the IJ to say there's nothing there? Go ahead. I think this is actually what happened in matter of SH. This is BIA published concurrently with their new regulations in 2002. In that case, the judge didn't make any, didn't make enough factual findings to the BIA to review his grant of asylum. And so, and the BIA apparently didn't believe there was sufficient evidence in the record to support. So it sent a back down to the immigration judge for factual findings to explain its reasoning. Thank you. Judge Phillips, Judge Moritz, do you have any additional questions? No, thank you. No further questions here. Okay. Thank you, counsel. Counsel, could the respondent please begin? Okay. Good morning, your honors. May it please the court. Elizabeth Fitzgerald Sambu on behalf of respondent. Can all of you hear me okay? Yes. Okay, great. Thank you. Great. Respondent again urges this court to dismiss this petition for review for lack of jurisdiction. Here, Congress precluded this court from considering exactly this type of claim that petitioner is asserting. This court already has binding precedence in Morales-Sanchora and Arambula-Medina saying that this type of hardship analysis that the agency did, it's entirely discretionary. There's no algorithm. Therefore, there's no meaningful standard by which this court can review. And therefore, there's no jurisdiction. So here, it's clear that petitioner is aware of that case law and is attempting essentially to fashion a question of law or a constitutional claim for this sort of as a jurisdictional hook for this court to send his case back and which, as Judge Phillips noted, all the evidence is from years ago. So essentially, it would be up to the agency what to do with the case, but essentially, it would be sending this case back for the agency to start over and renew its analysis of, you know, what's going to, whether there's hardship to the children now, four or five years later, whenever the agency gets this. So nevertheless, though, even if this court assumes that what petitioner is saying about questions of law and jurisdiction is correct, so even if this court assumes it has jurisdiction, here, there's simply no error in the agency's decision. As Your Honors were noting, the immigration judge essentially took all of the evidence that he presented to the immigration judge and actually quoted the language, included every detail in the decision based on a psychological, or the psychologist's report, the letter from the teacher about the impact that petitioner's removal would have on the children, and quoted that evidence, cited to the record portions where that evidence is discussed, and essentially took every single argument and evidence that petitioner presented and included that in the immigration judge's decision. So essentially, what petitioner is saying is that because the immigration judge didn't start some of the sentences with the word accordingly, and then quoting the language, that therefore the immigration judge somehow, the analysis was wrong, that they're missing factual findings. But here, our position is that the immigration judge's decision is explicitly clear that the immigration judge accepted those facts that petitioner presented and then found that the hardship standard was met, and then when the board reviews all the hardship factors in the aggregate de novo later on appeal, the board came to the opposite conclusion. And so here, as Judge Moritz noted, petitioner did argue on direct appeal after he won before the immigration judge. He argued to the board that the immigration judge's decision was, you know, it was great. It included financial factors, non-financial factors, the emotional hardship, the academic performance hardship, et cetera, and therefore the board should agree with everything the immigration judge found. And it was only after he lost before the board the first time that he then switched his analysis and included this sort of alternative missing factual findings type analysis after he lost before the board and his motion to reconsider. And so since he lost, that's been his argument that somehow the immigration judge's decision actually was deficient because it didn't include things like accordingly before it quoted the language about hardship that he presented. So our position... Judge Hart, this is Judge Hart. How do you read letter of FH? That's the case most relied upon by petitioner in this field. This review. Right, Your Honor. So matter of FH was an asylum decision, and that was after, as petitioner noted, the board or the standard of review changed so that the board could no longer review factual findings de novo. So the board issued matter of FH sort of placing immigration judges on notice that now they'd have to issue fulsome decisions with all factual findings because then after the regulation changed, the board would then review for clear error and it would have to remand if there are missing factual findings. So it is true that in matter of FH, the board referenced factual findings being made in cancellation of removal cases, and it did reference hardship. And even in the recent decision, matter of JJG, the board referenced the fact that there are sometimes underlying factual findings in hardship determinations. However, there's absolutely no precedent from the board or any circuit court that mandates the parameters of factual findings as far as, you know, exactly what type of factual findings, the degree of hardship, et cetera. So that's all sort of very open-ended. Essentially, the board's precedent about cancellation of removal only requires the immigration judge to identify all relevant hardship factors and then analyze on the factors sort of meet that threshold of exceptional and extremely unusual hardship. So although factual findings might exist underlying the hardship determination, there is no precedent or like steps, as the petitioner is describing it, there is no precedent requiring these sort of like sequential steps for the hardship standard. And that's actually very different than all the asylum case law, including matter of SH that petitioner is relying on, because Congress created various requirements for asylum and withholding of removal in the Immigration and Nationality Act that don't exist for this sort of exceptional, extremely unusual hardship judgment cause, as Courtney has described it. So for asylum, there are parameters. There is a legal standard that must be met. There are underlying factual findings that the immigration judge must make in order to So that simply doesn't exist here in this context, particularly where this court has already held in its precedent that there is no algorithm. So petitioner keeps asserting that there's this sort of this algorithm or this standard that the agency is obligated to require about degrees of hardship, et cetera. But there simply is no precedent saying that. And in fact, contrary to his claim, this court has already repeatedly held that there is no standard. And that's why this court can't review these determinations, because there are no requirements for what the agency, the steps that the agency has to follow, other than Counsel, let me ask Judge Phillips if he has any questions at this time. Okay. Yes. Yes. Thank you. You referenced I.J.'s decision, and it sounded more robust by your telling, because when I read it, and we get to this part that we're concerned about, there's really nothing. There's the only thing that I see is a sentence that says if she were to accompany, if the daughter were to accompany her father to Mexico, then she would suffer significantly in schooling. Well, that's not even in play, because she's not going to Mexico. Here's my question. If the I.J. had done these predictive findings, as your opposing counsel says were required, and said, if he is deported, father is deported, then she won't be able to go to college. She'll have to drop out to help her disabled mother so that they can maintain a household. Her life will crumble in various ways. That's my prediction based on the evidence. And that had gone up to the board. Could the board then say, well, we disagree with that predictive finding, because we just don't think that there's enough in the record to support that, and so we're going to dismiss that. And after we dismiss that, then it looks to us as though the petition should be denied. Well, Your Honor, I think if the immigration judge had chosen to make these sort of far reaching predictive findings, then if it was clear that it was a factual finding predicting the future, then the board probably would review for clear error, only because it is true that generally speaking, if the immigration judge is predicting future events, it's treated as a factual finding, and then the board reviews factual findings for clear error. However, I think the crux of the issue here is that there is no requirement that the immigration judge make these sort of far reaching predictive factual findings about sort of the degree or like the length and time of when it has to happen or how badly the academic effect would be, et cetera. This is all something that petitioner has just sort of come up with out of thin air and said that this is the requirement, but there's no precedent requiring that type of analysis. Isn't that implicit? The whole question is, what's the degree of harm? How badly will the children be harmed if the father is deported? Why is that not just part of the calculation, whether there's precedent or not? Well, Your Honor, I think here it's the impact of the children when the petitioner is removed. So here the agency considered that her academic performance would decline. At this point, she was, I believe, 14. So she had evidence showing that her school might decline, she would be emotional, she would have trouble functioning at school. That's the evidence that she presented. But she never made any arguments to the immigration judge that she would no longer be able to go to college, or at least not explicitly. That's sort of requiring the immigration judges to analyze the emotional impact maybe like almost 10 years down the line. Here, I think there's no precedent requiring the immigration judge or the board to analyze the hardship sort of for the qualifying relative the whole entire lifetime. It's essentially the immediate impact of the rule as far as what's likely to happen. And at least in this case, emotional hardship and they would have trouble in school. All right. I think you've answered my question. Thank you very much. No further questions, Judge Horwitz. Judge Moritz, do you have any questions? Well, I would like a little bit of clarification on the jurisdictional argument. I find it conceptually a little difficult. But if I'm understanding you correctly, for instance, on the SH case, you suggest that it doesn't really apply to cancellation of removal. But even if we agree that it does based on the comments in the case, indicating it may basically, what you're saying that that case still doesn't do what the petitioner wants it to do, which is require these degrees of hardship, findings of fact regarding degrees of hardship. But I guess what I see that as is still somewhat of a legal question that the petitioner is making, which is what does the case law require in terms of the degree of fact findings that need to be made? And don't we have jurisdiction to at least consider that argument he's making? Because he's not asking us right now to weigh or balance the factors or to reconsider the discretionary decision. He's asking us to look at whether additional or more detailed fact findings should have been made. And isn't that a legal question? And perhaps we reject that question if we agree with you, reject his position. But do we not have jurisdiction to review it? Sorry about the long question there, but you can see I struggle with this conceptually. So right, Your Honor, and I think that's why we sort of first presented it as even if this court assumes, then that might be the easier way to go in our view. But however, it is true. So our position is that no, this court doesn't have jurisdiction still or that a petitioner has not presented a colorable question of law or a constitutional claim. And the reason for that is because at least before the Supreme Court's Guerrero decision, this court's case law was pretty clear that questions of law is restricted to only statutory construction type claims. And so here, it's not a statutory construction claim. It's more so whether the board followed its own regulation and whether who is making the factual findings, the extent of factual findings, et cetera. That's different than saying what exactly does the statute require or mean? Because this court has already held that. Oh, go ahead. I'm sorry. Don't we know after Guerrero that it's broader now, broader than that? Well, Your Honor, Guerrero doesn't apply. Guerrero explicitly, I guess it's complicated because Guerrero corrected the term questions of law in 8 U.S.C. 1252 A to D. However, Guerrero was in the context of the criminal alien bar under 1252 A to C. And there, the issue was a motion to reopen and something where there was a legal standard to apply. It's just that the Fifth Circuit said it was a factual inquiry. So therefore, it knew sort of what the standard was, but it just said it didn't have jurisdiction because it was factual. So here, it's very different because the Supreme Court in Guerrero acknowledged the existence of this provision at issue 1252 A to B.I. about discretionary decisions. But it didn't say anything about discretionary decisions. And it explicitly sort of, or at least it tellingly omitted that from its analysis and didn't say anything about it. It didn't say that its decision applied to discretionary determinations. And so essentially, our position is that it still leaves us as an open issue. And the fact that, and also this court already has binding precedent in Morales-Cantora and Arambula-Medina saying that this term judgment in 1252 A to B.I., and particularly the exceptional and extremely unusual hardship judgment within cancellation of removal is a discretionary determination. There is no algorithm to determine whether the agency came to the right conclusion or judgment. And so therefore, there is no meaningful standard to judge it against. So essentially, what's this? Go ahead. Finish your, your time has expired. I think he responded to my question. Yes. Thank you for the response. Thank you. Thank you all. Thank you so much. Well, let me ask Judge Thorops, do you have any further questions? No, I don't. Thank you then. Counselor, your time has expired. And I believe petitioner's time expired. Is that, is that correct? Yes, that is correct. He has no time remaining. Okay. All right.